UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re:

RICHARD D. MacGIBBON,                    No.  05-47976

              Debtor.

---

RICHARD D. MacGIBBON,

              Plaintiff,                 Adversary No.  07-4024

vs.                                      **AMENDED DECISION**[1]

DEBORAH J. MacGIBBON and
the STATE OF WASHINGTON,

              Defendants.

As the old colonel said, "Gunslinging is its own reward."  The aftermath of the MacGibbon marriage is illustrative of his maxim.

The fundamental issue presented is whether a spousal maintenance provision, imposed in a Decree rendered after trial of a contested dissolution of marriage, and which ties one ex-spouse's ongoing support to the other's gross income rather than her actual needs, is "in the nature of alimony, maintenance or support" and thus nondischargeable.

I conclude that there is no requirement of actual current need, and considering, first and foremost, the dissolution court's intent, as well as the other customary factors, find the provision is in the nature of

---

[1]     Minor clerical changes made.  See Notice of Minor Clerical Changes docketed herewith [and corrected as set forth in letter to publishers dated 29 February 2008].

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 1 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 1 of 28

alimony, maintenance and support and thus nondischargeable under
§ 523(a)(5).[2]

That makes the question of dischargeability under § 523(a)(15)
moot, and neither the ex-spouse nor the State violated the automatic
stay of § 362 in enforcing, assessing, and collecting support from
exempt assets.


## I. BACKGROUND

**A. Dissolution:**

Richard and Deborah MacGibbon were married for approximately
20 years and have six children. The dissolution of their
marriage in 2000 followed a 12-day trial.

The decree of dissolution orders maintenance based on a
formula rather than a fixed sum. Until Richard's 60th birthday
in 2009, he must pay Deborah one half of his "gross income
from all sources," after deducting child support and income
taxes. The maintenance provision specifies a "base rate"
below which maintenance payments may not fall: $4,000 per
month until 2003, $5,500 per month until 2006, and $7,000 per
month until 2009 [("Base Support")]. For the five years after
Richard's 60th birthday, he must pay one-half of his gross
income "generated by his work in the airlines industry."

In re MacGibbon, 139 Wash. App. 496, 500, 161 P.3d 441 (Wash. App. 2007)
(paragraph numbers and footnotes omitted). [Exhibit D-7]

As required by Washington law, RCW Chapter 26.09, the decree of
dissolution, exhibit P-4, ("Decree") allocates the property and
liabilities between the parties, sections 3.2-3.5, includes a hold

---

[2] Absent contrary indication, all "Code," chapter and section
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 prior to
its amendment by the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 ("BAPCPA"), as the
relevant cases were filed before its effective date (generally
17 October 2005). "RCW" references are to the Revised Code of
Washington.

"FRBP" references are to the Federal Rules of Bankruptcy
Procedure, and "FRE" references are to the Federal Rules of Evidence.

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 2 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 2 of 28

harmless provision in section 3.6, and provides for support and maintenance in section 3.7. The decree is predicated on the dissolution court's findings of fact and conclusions of law, exhibit P-5 ("Findings"), wherein maintenance is addressed in section 2.12, extending five and one-half pages. Although no oral ruling transcript is in evidence, and no one testified at trial regarding the provenance of the Findings, which are made on the pleading paper of Ms. MacGibbon's counsel, the extended discussion reads more like the distillation of an oral ruling than typical Washington State Court findings and conclusions.

In any event, the Findings are extensive:

2.12 MAINTENANCE

Maintenance should be ordered for Ms. MacGibbon.

The post-dissolution economic position of the parties is of a "paramount concern" to this Court. Ms. MacGibbon is in need of maintenance.

. . .

One objective of these proceedings should be to balance equally those changes and adjustments between the parties. Ms. MacGibbon, of necessity, has already begun making adjustments to her lifestyle to accommodate this "downsizing." However, as the custodial parent of the five minor children, she will clearly need to receive substantial child support, property and maintenance.

Maintenance is a flexible tool. It provides reasonable assistance to the financially handicapped spouse, by providing money for training or retraining for the future. It also provides a means of distributing property so as to maintain an overall fair and equitable standard of living for both parties.

. . .

The marriage is of substantial duration and at separation the wife is to all intents and purposes unemployable. The husband's support responsibilities should be long term.

. . .

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 3 of 28

Case 07-04024-PHB    Doc 104    Filed 02/14/08    Ent. 03/03/08 09:43:37    Pg. 3 of 28

Long term awards of maintenance in reasonable amounts should be granted when it is clear, as here, that Ms. MacGibbon will not be able to contribute significantly to her own livelihood. This is, in part, because of the disparity in the parties' respective post-dissolution earning capacity, Ms. MacGibbon's parenting responsibility, and the relatively high standard of living enjoyed during the marriage. Ms. MacGibbon will likely never achieve, even with education and training, the degree of financial independence Mr. MacGibbon can enjoy because of his earning capacity. Ms. MacGibbon forfeited her own economic opportunities, and ability to save for retirement, to be a homemaker and to enable Mr. MacGibbon to advance in his career. Ms. MacGibbon was primarily responsible for raising the parties' six children. Ms. MacGibbon provided the day to day services needed by the community to function as a family. She did so at a sacrifice of her economic opportunities in the marketplace. That trade-off, clearly agreed to by Mr. MacGibbon, left Ms. MacGibbon economically disadvantaged as compared to Mr. MacGibbon. Ms. MacGibbon made sacrifices in order to benefit the community. She should reap her fair share of any resulting benefit.

Ms. MacGibbon's income will never achieve the post-dissolution economic level of Mr. MacGibbon. Therefore, immediate rehabilitation and re-entry into the job market are not issues, especially in view of Ms. MacGibbon's job experience and parenting responsibilities.

Without appropriate adjustment, Mr. MacGibbon will be able to support a lifestyle more comparable to the lifestyle enjoyed by the couple during marriage than will Ms. MacGibbon.

The above factors warrant a permanent equalization of the parties' adjusted and future standard of living through an award of property, including maintenance.

. . .

Mr. MacGibbon, as an increasingly senior pilot for Federal Express, will have an annual gross income of approximately $180,000. Therefore, he has the ability to pay substantial maintenance to Ms. MacGibbon. Moreover, his significant income is likely to continue its 20 year trend over time.

Ms. MacGibbon has no income and it will be a long time before she can make any meaningful financial contribution to the upkeep of the family. Childcare and home care are fulltime jobs for Ms. MacGibbon, as they have been over the past 20 years. Her entry level earnings will barely cover child and home care costs that would be incurred if she went to work now.

Findings, pages 4-7.

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 4 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 4 of 28

Section 2.20 of the Findings lays out the financial situations of the parties:

2.20 OTHER:

Richard MacGibbon is 50 years old and in good health. He began working as a pilot for Flying Tiger Lines in 1974 through August 1989, when it merged with Federal Express. He has advanced in his employment to the position of captain. As such, he is qualified to fly B-727 and A-300 airplanes. As a captain, it is estimated his average net salary in 1999, before voluntary retirement plan deductions, will be about $12,200 per month. Mr. MacGibbon's gross income from Federal Express for 1999 is estimated to be about $191,000. In addition, he has rental income that will generate about $8,000 - 10,000 more each year.

. . .

Deborah MacGibbon is 47 years old. She was working as an LPN when she met Mr. MacGibbon. After they began living together in 1977, Ms. MacGibbon no longer worked, primarily because Mr. MacGibbon did not want her to, and the parties agreed she would take care of their home and he would earn the family's income. They were married on August 7, 1979. By the time their first child, Dianne, was born in 1980, Ms. MacGibbon's career as a homemaker was established. Her nursing training is now outdated. The only other formal work experience she has is that which she acquired when she assisted Mr. MacGibbon in his operation of a small computer consulting company, R. M. Enterprises, from their home from 1980 through 1997. That business is no longer active and Mr. MacGibbon does not intend to activate it.

Ms. MacGibbon has relevant health issues. . . . . These health problems are generally under control, but limit Ms. MacGibbon's ability to work outside the home. Over all, Ms. MacGibbon is a healthy and capable woman who, the Court believes, will improve in health and capability once this matter is concluded.

Ms. MacGibbon has no independent income and no appreciable skills — especially in view of her responsibility to raise five minor children.

. . .

There are many basic princip[les] that the Court should consider in making a property division and in providing for maintenance as required by RCW 26.09.080 and RCS 26.09.090. The court has considered all of the requirements of these statutes in its rulings and all other legal requirements.

Inadequate income is a major cause of harm to children of a divorce. Household income is one of the most important influences on a child's well-being post-divorce.

A basic consideration is the economic disparity between Ms. and Mr. MacGibbon.

In conclusion:

1.  This is a long term marriage.

2.  Ms. MacGibbon has a financial interest in Mr. MacGibbon's future earnings because his career and earnings potential were enhanced by virtue of their joint marital partnership decision that Ms. MacGibbon would forgo any career, earnings potential and retirement assets, in order to tend to their family home and six children and Mr. MacGibbon would be the family bread winner and provide his wife's future economic security.

3.  The future standards of living and net worth of Ms. MacGibbon and Mr. MacGibbon should be equalized as much as possible.

Findings, pages 16-19 (some citations omitted).

Sections 2.12 and 2.20 of the Findings render unambiguous the dissolution court judge's intent that the provisions be maintenance or support: she was equalizing the post-dissolution disposable income between the MacGibbons.

The Decree provides:

3.7  SPOUSAL MAINTENANCE

The [debtor] shall pay compensatory maintenance as follows: [Debtor's] gross income from all sources shall be distributed as follows:

First, his required child support shall be paid off the top.

Next, he shall pay all required federal income taxes, based on a tax return that follows conventional and Generally Accepted Accounting Princip[les]. All other lawful deductions, exemptions and credits shall be given to Mr. MacGibbon to the maximum value that he can lawfully use them to minimize his taxes. Any remaining deductions, exemptions or credits, that are of no value to Mr. MacGibbon in reducing his income taxes, shall be awarded to Ms. MacGibbon.

. . .

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 6 of 28

Case 07-04024-PHB    Doc 104    Filed 02/14/08    Ent. 03/03/08 09:43:37    Pg. 6 of 28

> All of [debtor's] remaining income shall be divided 50/50 with Ms. MacGibbon being awarded 50 percent of such income as maintenance until petitioner's 60th birthday in 2009. Monthly payments of maintenance shall be at the base rate of $4,000 per month to 2003, then the base shall be increased to $5,500 per month to 2006, and then increased to $7,000 per month until Mr. MacGibbon's 60th birthday in 2009. In any year in which a change in Mr. MacGibbon's income would result in an adjustment of the base maintenance of 10 percent or more, such adjustment must be made in May of each year upon Mr. MacGibbon's prior year's tax return. Make-up payments from Mr. MacGibbon to Ms. MacGibbon shall be paid in one lump sum payment before the end of the above May. . . . Mr. MacGibbon must provide Ms. MacGibbon with a verified copy of his prior year's annual tax return by the 20th of each April.
>
> . . .
>
> Any gross income earned by Mr. MacGibbon for five years after [his] 60th birthday, that is generated by his work in the airlines industry, shall be divided 50/50 with Ms. MacGibbon being awarded 50 percent of such gross income as maintenance.
>
> Mr. MacGibbon shall obtain life and disability insurance, with Ms. MacGibbon named as the beneficiary, that will pay Ms. MacGibbon the base maintenance rates, set forth above, to the date of his 60th birthday in 2009. Mr. MacGibbon shall provide to Ms. MacGibbon, on or before 15 days after the Decree is entered in this matter, and on or before the 15th day of January 2001 - 2008, proof that this required insurance has been obtained. If for any reason this insurance is not obtained, Mr. MacGibbon's unpaid maintenance obligation shall be a claim against his estate.
>
> Maintenance payments shall be made:
>
> to the Washington State Support Registry along with child support payments.
>
> . . .

For convenience, I will refer to debtor's obligations under this provision of the Decree, to the extent they exceed Base Support, as "Additional Support."

The Decree awarded all of the property, community and separate, of both parties, and granted neither party an interest in the property awarded to the other.

Returning to the Washington State Court of Appeals's narrative:

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 7 of 28

Case 07-04024-PHB    Doc 104    Filed 02/14/08    Ent. 03/03/08 09:43:37    Pg. 7 of 28

Richard appealed the decree and later appealed several administrative and judicial determinations interpreting and enforcing the decree. Two of those appeals are relevant here.

The first was Richard's appeal to this court of the decree of dissolution. In that appeal, he raised numerous issues including the trial court's division of property, its award of escalating maintenance to Deborah, the order of child support, and the award of substantial attorney fees to Deborah. In December 2001, this court filed an unpublished opinion, affirming the trial court in all respects except for a remand for minor modifications regarding child support.FN5 The supreme court denied his petition for review.

> FN5. In re Marriage of MacGibbon, Nos. 46304-7-I, 2001 WL 1565599 (Wash. Dec. 10, 2001), review denied, 148 Wash.2d 1015, 64 P.3d 649 (2003). Linked cases before the same panel dealt with a trial court finding of contempt by Richard. See Nos. 47672-6-I, 47772-2-I. [Exhibit D-7]

While that appeal was pending, Deborah requested assistance from the Division of Child Support (DCS) of the Department of Social and Health Services in collecting maintenance and child support from Richard.FN6 DCS commenced administrative proceedings to determine the amount Richard owed as maintenance for tax year 2000. Following a hearing, an ALJ issued an order assessing $90,777.55 in additional maintenance to be paid to Deborah. In calculating the maintenance, the ALJ included $140,647 in proceeds of Richard's sale in 2000 of California real property that had been awarded to him in the decree of dissolution. Richard petitioned for judicial review in King County Superior Court. After a hearing, the superior court affirmed the administrative decision in all respects. Richard then appealed to this court.

> FN6. RCW 74.20.040(2). See also 20 Washington Practice, Family and Community Property Law, sec. 36.10, n.1, pp 417-418 ("other definitional provisions make the statute applicable to maintenance", citing RCWA 74.20A.020(4); RCWA 74.20A.020(9), and RCWA 74.20A.020(10)).

In that second appeal to this court, Richard argued that the superior court erroneously interpreted "gross income from all sources" to include income generated from the sale of his previously awarded separate property (the California real property). According to him, this caused an improper "double recovery" of marital assets for Deborah that was inconsistent with the decree's stated purpose.FN7 This court affirmed in a July 2005 unpublished opinion, rejecting Richard's contentions on res judicata grounds. Our court decided that the failure to challenge in the first appeal the dissolution decree's maintenance formula based on "gross income from all sources" precluded raising the issue in the second appeal.FN8

(07-4024 – MacGibbon vs. MacGibbon and State of Washington)
DECISION - 8 of 28

Case 07-04024-PHB    Doc 104    Filed 02/14/08    Ent. 03/03/08 09:43:37    Pg. 8 of 28

FN7. <u>In re Marriage of MacGibbon</u>, No. 53981-7-I, slip op. at *5, 128 Wash.App. 1027, 2005 WL 1579767, (July 5, 2005). [Exhibit D-8]

FN8. Id.

Meanwhile, Deborah requested further assistance from DCS in recovering past due maintenance for tax years 2001 and 2002. In the administrative proceedings that followed, the ALJ addressing tax year 2001 determined that Richard owed $55,948.74 for past due maintenance for that year. Another ALJ determined in a later hearing that Richard owed $39,944.60 for tax year 2002. Both ALJs rejected Richard's claim that income he reported on his tax returns for those years for IRA distributions should be excluded from the maintenance calculation. His claim was based, in part, on the argument that the IRA was a fund awarded to him as part of the property division of the dissolution decree. He essentially argues that those proceeds cannot be used to calculate maintenance for Deborah because they were awarded to him.

Importantly, the ALJs also rejected Deborah's request for attorney fees. They also rejected her claim for interest on the delinquent maintenance obligations from the times they were due.

Richard sought review of the administrative decisions when he petitioned for judicial review in King County Superior Court. Deborah did not cross-petition for review of any part of either ALJ ruling. However, several months after the final order by the ALJ regarding tax year 2001, Deborah made "counterclaims" for attorney fees and interest for the delinquent maintenance obligations in her response to the petition for review.

In September 2005, a superior court judge affirmed the administrative determination regarding tax year 2001. That judge also granted Deborah's request for awards of attorney fees at both the administrative and judicial review levels, imposed CR 11 sanctions against Richard and his counsel, and awarded interest for the past due maintenance.

In December 2005, a different superior court judge affirmed the administrative determination regarding tax year 2002 and granted Deborah's request for interest on the past due maintenance. In a later ruling, the same judge also granted Deborah's requests for attorney fees at the administrative and superior court review levels.

Richard timely appealed the superior court order denying the petition for review and the order assessing attorney fees and sanctions for the 2001 tax year matter. He also appealed the order denying his petition for review and the order assessing

attorney fees for the 2002 tax year matter after the attorney fees order was entered. We consolidated these appeals.

In re MacGibbon , 139 Wash. App. 496, 500-503, 161 P.3d 441 (Wash. App. 2007) (paragraph numbers and some footnotes omitted).

The Washington Court of Appeals reversed the award of attorney's fees against debtor and vacated and remanded for reconsideration an award of sanctions against him.

**B.   Bankruptcies:**

There is more:  debtor has filed three bankruptcy petitions, and Ms. MacGibbon one, and all of the cases have been contentious.

Debtor Richard D. MacGibbon filed a chapter 11 case (No. 04-14951) 13 April 2004; that case generated three adversary proceedings between the MacGibbons, as well as contested motions to convert and for relief from stay brought by Washington's Department of Social and Health Services ("DSHS") seeking to enforce spousal support, and was dismissed approximately 15 months later on motion of the United States Trustee, joined by DSHS; no plan had been proposed.  During the pendency of that bankruptcy, debtor and his current wife sold the house in Issaquah, Washington, which had been awarded to him in the dissolution.  His bankruptcy counsel held the proceeds in trust, but remitted approximately $39,000 to DSHS, which paid it over to Ms. MacGibbon. DSHS served an order to withhold and deliver (an administrative garnishment under Washington law) on counsel, seeking the roughly $126,000 still held in his trust account.

Debtor's response was to file a chapter 13 case (No. 05-46148), with the same counsel.  DSHS moved to dismiss or require turnover of the funds held by counsel.  I dismissed the case because the debtor

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 10 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 10 of 28

scheduled over $355,000 in non-contingent liquidated unsecured debts, exceeding the debt limit of § 109(e).

Debtor then filed the present case (No. 05-47976), with the same counsel, and again as a chapter 13. This time he listed non-contingent liquidated unsecured debt in the amount of $209,404.02, with no explanation of the change in answer to question 10 (regarding transfers within the last year) of his statement of financial affairs or elsewhere. The State again moved for turnover of the funds held by counsel or dismissal of the new case, and on 4 October 2005 I ordered debtor and counsel to remit the funds to the State. That was done, and the state paid those funds over to Ms. MacGibbon. The State objected to confirmation of debtor's proposed plan, and the chapter 13 trustee moved to dismiss or convert the case. Debtor obtained new counsel, who moved for voluntary conversion of the case to chapter 7; I entered an order to that effect 26 October 2005. Debtor has received his discharge, which, of course, excepts nondischargeable debts.

Meanwhile Ms. MacGibbon had filed her own chapter 11 case in April of 2005 (No. 05-15099), and she confirmed her plan in September of that year. The source of funds to effectuate the plan was the Issaquah house sale proceeds held in debtor's counsel's trust account. Debtor filed a variety of claims, all of which were disallowed. He unsuccessfully appealed both the denial of his motion to reconsider confirmation and the order disallowing his claims. But Ms. MacGibbon did not fully fund the plan: she spent approximately $42,000 of the funds recovered from Mr. MacGibbon's bankruptcy counsel's trust account, rather than apply it to complete payments in accordance with her confirmed chapter 11 plan. The United States Trustee moved to convert the case to one under chapter 7, and the case was converted. The trustee sought to recover

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 11 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 11 of 28

the plan deficiency from debtor's ongoing payments, and on the trustee's motion, the State was ordered to remit to the trustee 75% of the excess of its collections from debtor over his child support obligations. The trustee's objections to debtor's seven claims were sustained. No appeals this round.

## C. Adversary Proceeding:

In addition to the State's turnover motion recounted above, debtor filed a variety of motions in this case, seeking, among other things, to enjoin Ms. MacGibbon from engaging in supplemental proceedings, abandonment of his malpractice cause of action against his attorneys, seeking disbursement of funds held by the trustee, and opposing the trustee's motion to disburse funds to DSHS for the benefit of Ms. MacGibbon, with little success.

In February of last year, he filed this adversary proceeding against Ms. MacGibbon and the trustee in her converted bankruptcy case. He also filed motions to enforce the automatic stay, attempting to preclude the State from enforcing his support obligation, which I denied. Some of those issues have become part of this adversary proceeding: debtor's initial complaint named Ms. MacGibbon and the trustee in her converted case as defendants, and sought a determination that his obligations to Ms. MacGibbon are dischargeable under § 523(a)(5). The State, not a named defendant, responded with a motion for summary judgment. After some procedural wrangling, the trustee was dismissed, and the State was joined as a party in its capacity as the collector of support on behalf of Ms. MacGibbon.

Debtor in his third amended complaint seeks a determination that his obligation to pay maintenance in excess of the Base Support set

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 12 of 28

Case 07-04024-PHB    Doc 104    Filed 02/14/08    Ent. 03/03/08 09:43:37    Pg. 12 of 28

forth in the Decree is dischargeable on three grounds: first, that Ms. MacGibbon's chapter 11 plan operated as an assignment of her right to receive $125,000 of the maintenance, and the order requiring the State to pay over 75% of those funds to her trustee is an enforcement of that assignment; second, that maintenance is really a dischargeable property division, and, third, that to the extent that it is not, he lacks the ability to pay it, and the benefit to him of discharge would outweigh the detriment to Ms. MacGibbon. He also seeks a determination that Ms. MacGibbon and the State violated the automatic stay through their various collection actions, and that he has been damaged thereby.

I denied debtor's motions for a temporary restraining order which echoed his earlier motion in the main case to enforce the automatic stay (the object of both being to stop DSHS from enforcing the support obligation), and the State was named as a party in debtor's third amended complaint (docket no. 46). The State and Ms. MacGibbon responded (docket nos. 56 and 58); I denied the State's motion for summary judgment, as well as debtor's implicit cross motion for summary judgment on the assignment issues.

I entered a pretrial order (docket no. 80) and an amended pretrial order (docket no. 91) in which the parties agreed in extensive detail regarding the Findings and Decree and the history of Ms. MacGibbon's and the State's enforcement efforts and other post-dissolution proceedings, as well as the economic situations of the parties. They also stipulated to the admissibility of numerous exhibits, including their expert declarations.

The able counsels' exemplary professionalism resulted in a very short trial: the exhibits identified in the pretrial order were admitted, and the only witnesses were debtor, Ms. MacGibbon, and a state

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 13 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 13 of 28

support enforcement officer who testified respecting the State's collections and disbursements. After argument, I requested post-trial briefs, and took the matter under submission.

## II. JURISDICTION

These are core proceedings within federal bankruptcy jurisdiction, 28 U.S.C. § 157(b)(2)(I) and (O), referred to this court by General Rule 7 of the Local Rules, W.D. Washington.

## III. ISSUES

A. Is debtor's obligation to pay Additional Support nondischargeable under § 523(a)(5)?

B. If not, is it nondischargeable, in whole or in part, under § 523(a)(15); and

C. Did the State and Ms. MacGibbon violate the automatic stay of § 362 when they assessed amounts owed under the dissolution decree, and applied the amounts collected, after he filed his petition?

## IV. ANALYSIS

In addition to the admitted facts set forth in the agreed amended pretrial order (overruling debtor's objection to no. 13, and excluding the others to which he objected, as none of them would be dispositive, and the objections are thus moot), taking judicial notice of those matters contained in this court's docket to the extent they are not set forth in the pretrial order, FRE 201; _In re Blumer_, 95 B.R. 143, 146-47 (9th Cir. BAP 1988), and having considered the evidence at trial, I find the facts recounted above in part I. FRBP 7052.

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 14 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 14 of 28

**A.    Section 523(a)(5)**

The § 523(a)(5) exception to discharge strikes a balance between competing policies.  On the one hand, the goal of providing a "fresh start" to the bankruptcy debtor requires that exceptions to discharge be confined to those plainly expressed.  In re Klapp, 706 F.2d 998, 999 (9th Cir. 1983). On the other hand, this court has recognized "an overriding public policy favoring the enforcement of familial obligations." Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir. 1984).

In re Chang, 163 F.3d 1138, 1140 (9th Cir. 1998).

Prior to its amendment by BAPCPA, Section 523 provided:

(a) a discharge . . . does not discharge an individual debtor from any  debt —

        . . . .

        (5) to a spouse . . . for alimony to, maintenance for, or support of such spouse . . . in connection with a . . . divorce decree or other order of a court of record . . . but not to the extent that

                (A) such debt is assigned to another entity, voluntarily or by operation of law . . . ; or

                (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; . . .

Subparagraph B's nonsequitur, excepting from discharge a liability "designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support" (emphasis added) has been construed to make sense, and the provision's accepted meaning is that debts actually in the nature of alimony, maintenance, or support are nondischargeable.  As noted by the Ninth Circuit:

When determining whether a particular debt is within the § 523(a)(5) exception to discharge, a court considers whether the debt is "actually in the nature of  . . . support." Shaver, 736 F.2d at 1316.  This question is a factual determination made by the bankruptcy court as a matter of federal bankruptcy law.  In re Sternberg, 85 F.3d 1400, 1405 (9th Cir. 1996), rev'd on other grounds, In re Bammer, 131

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 15 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 15 of 28

F.3d 788 (9th Cir. 1997) (en banc).  A relevant factor for the bankruptcy court to consider when making this determination is how the particular state law characterizes the debt.  <u>In re Catlow</u>, 663 F.2d 960, 962-63 (9th Cir. 1981).

<u>Chang</u>, 163 F.3d at 1140.

Debtor's fundamental premise in this adversary proceeding is that the Additional Support resulting from the Decree's formula requiring him to pay one-half of his gross income after federal income taxes and child support as maintenance is not "actually in the nature of alimony, maintenance, or support."  As recounted in the Washington Court of Appeals opinion quoted above, application of that formula generates considerable obligations by including capital gains from the sale of the property and retirement account distributions.  He does not seek to discharge his obligation to pay Base Support.

Although BAPCPA amended § 523(a)(5), and it now provides simply that "domestic support obligation(s)" are not dischargeable, § 101(14)(A) defines that term to mean a debt that is "in the nature of alimony, maintenance, or support . . . ," so the issue of what obligations are "in the nature of support" remains salient.  Here, the fundamental question is whether the provision establishing maintenance entirely on the basis of the debtor's circumstances, without regard to the absolute (as distinct from relative) current needs of Ms. MacGibbon, is "actually in the nature of alimony, maintenance, or support."

Debtor has forcefully argued throughout these proceedings that the answer to that question is "no."  He argues, most recently in his trial and post-trial briefs (docket nos. 79 and 81), that the formula operates to redistribute property post-dissolution, and that the state trial judge intended to do so, emphasizing her statement that the economic situations going forward "warrant a permanent equalization of the

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 16 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 16 of 28

parties' adjusted and future standard of living through an award of property, including maintenance." Findings, Section 2.12, at 6-7. He argues that this result is inequitable, and contends that the Decree effectively distributed 52.5% of the marital property to Ms. MacGibbon, and that it is contrary to Washington law to distribute the property equally and then award maintenance from the property distributed, citing Marriage of Barnett, 63 Wn. App. 385, 388, 818 P.2d 1382 (1991), and that his Additional Support obligation is not actually in the nature of alimony, maintenance and support.

Debtor propounds the familiar principles that bankruptcy courts determine whether an obligation is truly in the nature of support under federal law, citing Chang, 163; In re Jodoin, 209 B.R. 132, 137-38 (9th Cir. BAP 1997); and In re Gionis, 170 B.R. 675, 681 (9th Cir. BAP 1994), and that substance, not form, and content, not labels, control, citing In re Kritt, 190 B.R. 382, 388 (9th Cir. BAP 1995); and Jodoin, 209 B.R. at 138, note 14. He argues from In re Myrvang, 232 F.3d 1116, 1123 (9th Cir. 2000) that the bankruptcy court must break down an obligation into its parts and analyze the dischargeability of each part separately.

He also asserts that there are three components to his maintenance obligation: Base Support, one-half of his earned income, and one-half of capital gains or proceeds on sale or distribution of property. Debtor attempted to challenge the applicability of the formula to unearned income in his second state appeal, but was precluded by his failure to have done so in his first appeal. Exhibit D-8, p. 1. But, even if Myrvang, a § 523(a)(15) case, were pertinent, no provision in the Decree or Findings distinguishes between earned income and capital gains, distributions from retirement accounts, or anything else which might be within his gross income, and debtor seeks only to have the excess of his

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 17 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 17 of 28

obligation over the Base Support amount declared dischargeable. There is no necessity to deconstruct his Additional Support debt here.

He continues:

> When analyzing the dischargeability issue, it is necessary to compare Mr. MacGibbon's obligation with Ms. MacGibbon's need. "Need is one important factor. 'Support payments tend to mirror the recipient spouse's need for support.'"

> > FN13. Gionis, 170 B.R. at 682, citing, Shaver 736 F.2d at 1317; and In re Marriage of Edwards, 83 Wn. App. 715, 722, 924 P.2d 44 (1996). See, also, In re Gianakas, 917 F.2d 759, 762 (3rd Cir. 1990) ("the court shuld examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support." (Citations omitted).

Washington's state law is in accord.

> > FN14 In re Marriage of Luckey, 73 Wn. App. 201, 209. 868 P.2d 189 (1964) (maintenance is designed to provide necessary support to the disadvantaged spouse until he or she can become self supporting.); and In re Marriage of Foley, 84 Wn. App. 839, 845-46, 930 P.2d 929 (1993) (when determining maintenance courts are strongly governed by the needs of the receiving spouse.)

> Here, Mr. MacGibbon does not contest Ms. MacGibbon is entitled to maintenance equal to one-half his gross earned income after he pays tax and child support and that this amount is actually in the nature of support. This was the amount approximated by the State court judge when she estimated the maintenance and set the base maintenance rate. This amount provided for Ms. MacGibbon's and the children's needs after the divorce. [Debtor's expert] explains in his testimony, a State trial judge is not going to leave the disadvantage spouse's and children's needs to chance. The ability to meet those needs is not going to be dependent upon the payor spouse's discretion and control as to when, and if, he sells property or receives a distribution.

> The other non-dispositive factors show the portions of the maintenance at issue are not actually in the nature of support. The main factors a court needs to consider are "(1) an absence of support payments in the decree, then (2) the

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 18 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 18 of 28

presence of minor children in the marriage and (3) a disparity of income between the parties may serve as indicia of need."

> FN15 *In re Gionis*, 170 B.R. at 682 *citing* *Shaver*, 736 F.2d at 1316.

"While a bankruptcy court may consider other factors, these are the primary ones that inform the inquiry in this case."

> FN16 *Id.*

Trial Brief, (docket no. 79 at 10:11-11:16) (emphasis in original).

He also contends that other factors also suggest the provisions in question are not in the nature of maintenance or support: whether the payments are made over a period of time or in a lump sum, and whether the obligation terminates upon death or remarriage. Regarding the requirement that he make a single payment of the extra amount owed, debtor implies that this makes the payment a single lump sum, although there have already been multiple annual assessments (which, in fact, triggered this particular dispute). He also notes nothing in the Decree or Findings terminates on his death, or Ms. MacGibbon's death or remarriage, but asserts incorrectly that he is required to have life insurance to pay the obligation, so it would survive his death and become a lien upon his estate. But that provision in section 3.7 of the Decree (at 5:10-13) pertains only to Base Support. Finally, he argues that the state court's label and the fact that he has treated the payments on his tax returns as deductible alimony or maintenance are minor factors, and that *In re Kritt*, 190 B.R. at 388-389, stands for the proposition that his tax returns do not create a quasi-estoppel. He did not pursue the assignment theory at trial, nor was it listed for decision in either pretrial order, or briefed in his trial or post-trial briefs.

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 19 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 19 of 28

Ms. MacGibbon[3] responds, in trial and post-trial briefs (docket nos. 78 and 82), agreeing in every important respect regarding the principles to be derived from the authorities, but vigorously disputing debtor's application of those principles to the facts at hand, and noting:

> Where, as here, the award was made in a contested proceeding, the intent of the state court trial judge is dispositive in determining the nature of the award. Gionis v. Wayne (In re Gionis), 170 B.R. 675, 682 (9th Cir. BAP 1994), aff'd, 92 F.3d 1192 (9th Cir. 1996). See also In re Jodoin, 209 B.R. 132, 138 (9th Cir. BAP 1997). As explained by Chief Judge Pappas in In re Kimball, 253 B.R. 920, 923 (Bankr. Id. 2000):
>
>> Because this Court is primarily concerned with discerning the intent of the state court judge in characterizing the various obligations imposed upon Defendant in the divorce action, it is the state court's formal Findings, Conclusions, and Decree that are the primary focus of this Court's inquiry.
>
> The relevant time period for the inquiry is the time when the order was entered. In re Seixas, 239 B.R. 398, 402 (9th Cir. BAP 1999).
>
> . . .
>
> According to the Ninth Circuit, the foremost consideration in determining if a debt is in the nature of support is:
>
>> whether the recipient spouse actually needed spousal support at the time of the divorce. [cite omitted] In determining whether spousal support was necessary, the trial court should examine if there was an "imbalance in the relative income of the parties" at the time of the divorce decree [cite omitted] In re Sternberg, 85 F.3d at 1405.
>
> The single most important factor in the MacGibbon dissolution was the significant disparity in the parties' incomes. Richard was an airline pilot who earned $190,000 per year and anticipate increased earnings, while Deborah was responsible for the care of the parties' five children, had not worked since she married Richard, and was to all intents and purposes unemployable.

---

[3] Although Ms. MacGibbon filed her own answer and participated without counsel at trial, she did not file briefs or argue separately; the defense battle was primarily waged by the State; for convenience I refer henceforth to the defendants collectively as "Ms. MacGibbon" in discussing their legal arguments.

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 20 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 20 of 28

Trial Brief, Doc. No. 79, at 3-4.

Respecting other factors, she argues that <u>Kritt</u> allows a party's tax treatment of the obligation, as well as the state law's characterization, as factors to be considered, citing <u>Chang</u>, 163 F.3d at 1140. She notes that under Washington law support obligations are modified and property awards are not, citing (via her expert's declaration, D-1 at 7:20) <u>In re Little</u>, 96 Wn. 2d 183, 634 P.2d 498 (1981), and RCW 261.09.170, and that debtor has twice sought to modify the obligation at issue.

Further, in Washington law, support orders can be enforced via contempt, while property awards not reasonably related to support cannot, <u>citing</u> <u>Decker v. Decker</u>, 52 Wn. 2d, 456, 465, 326 P.2d 332 (1958); <u>In re Marriage of Young</u>, 26 Wn.App. 813, 615 P.2d 508 (1980), and the state court has done so here. Exhibit P-3.

Finally:

> Washington law, RCW 26.09.170(2), provides as follows: "Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." Since the Divorce Decree is silent regarding the death or remarriage of Deborah MacGibbon, maintenance terminates if she remarries or dies. Such language indicates a support obligation. <u>Exhibit D-1, Hall Declaration, p. 8, lines 8-11</u>; <u>In re Shaver</u>, 736 F.2d at 1316.

Trial Brief, Doc. No. 78, at 6.

So, the question: is income-equalization independent of the recipient ex-spouse's current need "in the nature of support?"

First, some underbrush must be cleared: to the extent debtor's contentions are that the dissolution court awarded maintenance improperly as a matter of Washington law, or that the operation of the Decree's formula redistributes property contrary to state law, or that it was simply a mistake because it predicates maintenance on income

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 21 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 21 of 28

derived from the sale or other use of property awarded to him in the Decree, his arguments run afoul of the domestic relations exception to federal jurisdiction. The Supreme Court has clarified that "'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds," Marshall v. Marshall, 547 U.S. 293, 308 (2006) (citing Ankenbrandt v. Richards, 504 U.S. 689, 703-704 (1992). And federal courts must give state court judgments the same preclusive effect as do the courts of the state wherein the judgment was rendered. See 28 U.S.C. § 1738, the Full Faith and Credit statute, and In re Nourbakhsh, 67 F.3d 798, 801 (9th Cir.1995).

Secondly, it transgresses the Rooker-Feldman doctrine: the Supreme Court is the only federal court which may review an issue determined in or "inextricably intertwined" with a previous action in state court between the same parties. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983) (district court does not have jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional"); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923) (state court ruling on federal constitutional questions in the state court action could not be modified or reversed by district court). In Exxon Mobil v. Saudi Basic Inds. Corp., 544 U.S. 280, 284 (2005), the Court held that Rooker-Feldman is a narrow doctrine, confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

In Washington, res judicata (claim preclusion) prevents relitigation of a claim when it is identical to the claim in the prior

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 22 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 22 of 28

action in four respects: "(1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made." <u>Rains v. State</u>, 100 Wash. 2d 660, 663, 674 P.2d 165, 168 (1983). If the parties are identical, the quality of the persons is also identical. <u>Id.</u>, at 664.

Collateral estoppel (issue preclusion) in Washington courts requires: "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied." <u>Hadley v. Maxwell</u>, 144 Wash. 2d 306, 311, 27 P.3d 600, 602 (2001) (internal quotation omitted).

So the state law issues regarding propriety of the provisions and their operation are not before me, because they deal with issues of alimony and maintenance in the first instance, rather than their dischargeability or not under federal bankruptcy law. They are within the domestic relations exception, and because those issues were finally decided in the state courts before the filing of this adversary proceeding (and this bankruptcy), the <u>Rooker-Feldman</u> doctrine also prevents review here. Finally, I must apply Washington's preclusion rules, and all of the elements of both issue and claim preclusion are present.

That leaves the federal issue of dischargeability. In the Ninth Circuit's words, "[i]n determining whether a debtor's obligation is in the nature of support, the intent of the parties at the time of the settlement agreement is dispositive." <u>Sternberg</u>, 85 F.3d at 1405. Where, as here, the obligation was created in a state court's judgment, it is the intent of the trial judge which is relevant. <u>Gionis</u>, 170 B.R.

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 23 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 23 of 28

682; <u>Jodoin</u>, 209 B.R. at 138. And it is unmistakably clear that the dissolution court judge here intended to create a support obligation when she entered the Findings and Decree.

Although it is tempting in light of the Ninth Circuit's statement in <u>Sternberg</u> that "intent . . . is dispositive," 85 F.3d at 1405, to go no further, since the other factors here weigh heavily in favor of characterizing the Additional Support as "actually in the nature of alimony, maintenance, and support," I need not rely on the single fact that the dissolution court judge intended to create a support obligation.

The Decree's provisions operate to equalize the relative incomes of the parties and thus their comparative need, the payments extend over a number of years, and the obligation will terminate upon the death of either party or the remarriage of Ms. MacGibbon, RCW 26.09.170(2). Mr. MacGibbon has, by seeking modification of the provisions and his characterization of his payments on his tax returns, treated the obligation as maintenance or support. While the latter points do not strictly estop him from making the argument, they are evidentiary considerations which weigh against him. Finally, both the Washington Court of Appeals in its opinions, and the family court in enforcing the Additional Support provisions via contempt, show that state law characterizes those provisions as maintenance.

Taking all of these factors in conjunction with the primacy of the state court's intent at the time the Decree was entered, the Additional Support obligation appears to be in the nature of support. There remains the final question of whether, for an obligation to be "in the nature of alimony, maintenance, or support," that obligation must be based strictly on absolute need, rather than the relative economic

situations of the parties.  I think not — had Congress intended such a requirement, it could easily have created one by using language in § 523(a)(5) paralleling that which it used in framing the reciprocal exemption:  a debtor may exempt the "right to receive —

> . . .

> alimony, support, or separate maintenance, <u>to the extent reasonably necessary for the support</u> of the debtor and any dependent of the debtor; . . ."

Section 522(d)(10)(D) (emphasis added).

Giving meaning and import to every word in a statute, as I must, <u>Negonsott v. Samuels</u>, 507 U.S. 99, 106 (1993), and presuming that "Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another," as I must, <u>BFP v. Resolution Trust Corp.</u>, 511 U.S. 531, 537 (1994), I can only conclude that Congress established no requirement of actual need.  And it would be incongruous and unseemly, given that debtor's income was almost $200,000 per year when the decree was entered, and still exceeds $150,000 per year, to read the § 523(a)(5) exception to discharge as extending only to strict necessities when the language of the statute does not compel that.

Accordingly, I find that the obligations at issue are in the nature of alimony, maintenance and support, and are nondischargeable under § 523(a)(5).

**B.    Section 523(a)(15)**

As debtor's obligation to pay the Additional Support is nondischargeable under § 523(a)(5), the question of nondischargeability under § 523(a)(15) is moot.

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 25 of 28

Case 07-04024-PHB   Doc 104   Filed 02/14/08   Ent. 03/03/08 09:43:37   Pg. 25 of 28

## C. Automatic Stay

Section 362(b) provided, pre-BAPCPA, that:

> The filing of a petition under section 301, 302, or 303 of this title, . . . does not operate as a stay-
>
> . . . .
>
> (2) . . .
>
> (A) of the commencement or continuation of an action or proceeding for-
>
> . . .
>
> (ii) the establishment or modification of an order for alimony, maintenance, or support; or
>
> (B) of the collection of alimony, maintenance, or support from property that is not property of the estate[.]

In the Ninth Circuit's words:

> Section 362(b)(2)(A)(ii) was added to the bankruptcy code in 1994. Bankruptcy Reform Act of 1994, Pub.L. No. 103-394 § 304 (1994). The 1994 reforms were designed to "provide greater protection for alimony, maintenance, and support obligations owing to a spouse, former spouse or child of a debtor in bankruptcy." H.R. Rep. No. 103-835, at 54 (1994), reprinted in 1994 U.S.C.C.A.N. 3363. "[A] debtor should not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations." Id. Addition of this provision was among a series of changes that included limiting debtors' ability to discharge debt relating to spousal support, 11 U.S.C. § 523(a)(15), and creating new bankruptcy priority for such debt, 11 U.S.C. § 507(a)(7).

> The import of § 362(b)(2)(A)(ii) is consistent with our prior precedent counseling "bankruptcy courts to avoid incursions into family law matters...." Mac Donald v. Mac Donald ( In re Mac Donald), 755 F.2d 715, 717 (9th Cir.1985) (affirming bankruptcy court's grant of relief from stay to pursue modification of spousal support action).

> Here, § 362(b)(2)(A)(ii) covers the modification request. Specifically, Jacqueline sought to modify the existing support order on grounds that she incurred "extraordinary uninsured health costs." Although her medical needs arose as a consequence of the alleged assault by Christopher, medical expenses are typically encompassed within the rubric of spousal support. Thus, Jacqueline's modification request is squarely within the plain meaning of "the commencement ... of an action or proceeding for ... an order for alimony, maintenance, or support."FN4 11 U.S.C. § 362(b)(2)(A)(ii).

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 26 of 28

Case 07-04024-PHB    Doc 104    Filed 02/14/08    Ent. 03/03/08 09:43:37    Pg. 26 of 28

<blockquote>
FN4. In the same filing, Jacqueline also requested a determination with respect to unpaid spousal support arising from Christopher's employment in Montana. The motion to lift the stay was properly denied as to this claim. Because the claim was embraced within the Plan, and because it related to property of the estate, the claim did not fall within the § 362(b)(2)(B) exemption, which covers support collection "from property that is not property of the estate."
</blockquote>

<u>Allen v. Allen</u>, 275 F.3d 1160, 1163 ( 9th Cir. 2002).

Here, all of the actions debtor complains of were excepted from the stay by § 362(b)(2): the assessments were to determine the amount of his Additional Support obligations, and the collections were directed against his exempt retirement plans, not property of the estate. § 522(c)(1); <u>In re Lopez</u>, 224 B.R. 439 (Bankr. N.D. Cal. 1998). <u>See</u> <u>Owen v. Owen</u>, 500 U.S. 305, 308 (1991) (an exemption is an interest withdrawn from the estate).

Neither Ms. MacGibbon nor the State violated the automatic stay.

### V. CONCLUSION

Debtor's Additional Support obligation is nondischargeable under § 523(a)(5), which renders moot the question of its dischargeability under § 523(a)(15).

Neither the State nor Ms. MacGibbon violated the automatic stay of § 362.

I will enter a separate judgment.

*/// - **END OF DECISION** - ///*

Philip H. Brandt
United States Bankruptcy Judge
(Dated as of "Entered on Docket" date above)

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 27 of 28

Case 07-04024-PHB    Doc 104    Filed 02/14/08    Ent. 03/03/08 09:43:37    Pg. 27 of 28

1

2 CERTIFICATE OF SERVICE:
  I CERTIFY I SERVED COPIES OF
3 THE FOREGOING (VIA U.S. MAIL,
  FACSIMILE, OR ELECTRONICALLY) ON:

4

5 Dennis J. McGlothin                        Jeffrey B. Wells
  Email: dennis@olympiclaw.com              Email: eajbwellaw@aol.com
6 (Richard D. MacGibbon)                     (Richard D. MacGibbon)

7 Daniel J. Radin                           Alan J. Wenokur
  Email: bcuradin@atg.wa.gov                Email: ajw@seanet.com
8 (State of Washington)

9 Deborah J. MacGibbon                      Deborah J. MacGibbon
  c/o Sarah Weaver                          20408 NE 7th Court
  Sarah Weaver PLLC                         Sammamish, WA 98074
10 1325 4th Ave, Ste 940
  Seattle, WA 98101
11
  DATE:  3 March 2008
12
  BY:     /s/ Suzan Gallup
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(07-4024 - MacGibbon vs. MacGibbon and State of Washington)
DECISION - 28 of 28